UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No.: 8:20cv00887

**HARBOR GATES CAPITAL LLC,**

                **Plaintiff,**

v.

**APOTHECA BIOSCIENCES, INC. and SAEED "SAM" TALARI,**

                **Defendants.**

## COMPLAINT

Plaintiff Harbor Gates Capital LLC ("**Harbor Gates**"), by and through its undersigned counsel, hereby files this Complaint against Defendants Apotheca Biosciences, Inc. ("**Apotheca**") and Saeed "Sam" Talari ("**Talari**") (collectively, "**Defendants**"). In furtherance of the same, Harbor Gates respectfully states as follows:

## NATURE OF ACTION

1. This action ("**Action**") arises out of Defendants' breaches of two (2) convertible promissory notes dated, March 19, 2019, and April 26, 2019.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1332, in that there is diversity of citizenship between Harbor Gates and Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) in that a significant portion of the conduct at issue in this Action occurred in

4. Pinellas County, Florida. Venue is also proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because Defendant Talari is a citizen of and Defendant Apotheca's principal place of business is located in Pinellas County, Florida.

## THE PARTIES

5. Harbor Gates is a limited liability company organized under the laws of the State of Wyoming, which, at all times relevant to this Action, had its principal place of business in San Juan, Puerto Rico. None of Harbor Gates' members are citizens of Florida.

6. Defendant Apotheca is a Nevada corporation, which at all times relevant to this Action, had its principal place of business in St. Petersburg, Florida.

7. Upon information and belief, Talari is a citizen of St. Petersburg, Florida.

## BACKGROUND

8. Defendant Apotheca has promoted itself as a global leader in discovering new cannabinoid medical technologies to improve quality of life. Defendant Apotheca has advertised that it develops, engineers, licenses, and markets cannabinoid technologies and products in various market sectors.

9. In an effort to launch a new pharmaceutical grade CBD product line, Defendant Apotheca incorporated a new subsidiary ProMED Biosciences, Inc. ("**ProMED**").

10. In or about February 2019, an agent of Defendant Apotheca contacted Harbor Gates regarding an opportunity to provide Defendant Apotheca with necessary investment capital to fund ProMED's initial pharmaceutical grade CBD product line ("**Project I**").

11. Prior to investing, Defendant Apotheca's Chief Financial Officer at the time, Defendant Talari, disclosed that Defendant Apotheca had only issued two (2) other notes, and therefore, had not entered into significant debt transactions. On or about February 25, 2019,

Defendant Talari also advised Harbor Gates that ProMED had already received approximately $500,000.00 in preorders and had a full sales infrastructure in place. Finally, Defendant Talari informed Harbor Gates, that Defendant Apotheca expected approximately $1.2 million in total projected revenues for Project I.

12. Based on this information, Harbor Gates agreed to invest in Defendant Apotheca's ProMED investment opportunity and made two (2) loans to Defendant Apotheca totaling $280,500.00.

13. On or about March 19, 2019, Defendant Apotheca issued a six (6) month, 5% fixed convertible promissory note to Harbor Gates in the principal amount of $165,000.00 ("**March Note**") (March Note is attached hereto as "**Exhibit A**"), and convertible into shares of Defendant Apotheca's common stock. Harbor Gates funded the March Note on March 19, 2019. The March Note was due and payable on or about September 19, 2019 ("**March Maturity Date**").

14. Within three (3) months of the effective date of the March Note, Defendant Apotheca agreed to use approximately $150,000.00 of the proceeds as "payment toward the second half of the product ordered from manufacturer []." March Note at Schedule 1.

15. Prior to Harbor Gates' second investment, Defendant Talari advised Harbor Gates during a call on or about April 22, 2019, that Harbor Gates' investment funds had been used as set forth in the March Note and that Defendant Apotheca had received a large amount of ProMED products and put them into the market for sale. Defendant Talari also told Harbor Gates that the demand for the ProMED products was strong.

16. On or about April 26, 2019, Defendant Apotheca issued a six (6) month, 5% fixed convertible promissory note to Harbor Gates in the principal amount of $115,500.00 ("**April Note**") (April Note is attached hereto as "**Exhibit B**"), and convertible into shares of Defendant

Apotheca's common stock (the March Note and April Note are hereinafter referred to as the "**Notes**"). Harbor Gates funded the April Note on April 29, 2019. The April Note was due and payable on or before October 26, 2019 ("**April Maturity Date**").

17. According to the April Note, Defendant Apotheca agreed to use approximately $105,000.00 to make an "inventory purchase of products for [Defendant Apotheca's] CBD consumer division." April Note at Schedule 1.

18. However, by May 16, 2019, Defendant Apotheca reported cash of only $168,462.00, assets of $108,884.00, liabilities of $931,877.00, no revenue since inception, and a net loss of $2,512,440.00 in its Form 10-K filed with the U.S. Securities and Exchange Commission (the "**Commission**"). *See* Defendant Apotheca 2019 Form 10-K at F-1.

19. Although Defendant Apotheca claimed that its ProMED subsidiary had received approximately $500,000.00 in preorders, ProMED did not have a website.

20. On or about June 28, 2019, Harbor Gates became aware that the Commission, pursuant to Section 12(k) of the Securities Exchange Act of 1934 (the "**Exchange Act**"), had suspended trading in Defendant Apotheca's securities through July 15, 2019. *See Apotheca Biosciences Inc.*, SEC Release No. 86248, 2019 WL 2725303 (June 28, 2019) (the "**Trading Suspension Order**").

21. On or about July 5, 2019, Defendant Apotheca filed a Petition for Termination of Suspension of Trading (the "**Petition**") with the Commission. On or about July 18, 2019, the Commission entered its Corrected Order Requesting Additional Written Submissions and set a briefing schedule on the Petition. In accordance with the briefing schedule, Defendant Apotheca filed its opening brief (the "**Apotheca Brief**") on August 14, 2019. Defendant Apotheca admits in the Apotheca Brief that it lacked any actual orders of the ProMED product due to a "lack of

timely inventory and terms." *See* Apotheca Brief at ¶ 20.

22. Upon the Commission's entry of the Trading Suspension Order, Defendant Apotheca was in default of the Notes. Section 2.00 of the Notes defines an "Event of Default" as, among other things, "any trading suspension imposed by the [Commission] under Sections . . . 12(k) of the [Exchange Act]. Notes at § 2.00.

23. Subsequent to the Commission's entry of the Trading Suspension Order, Harbor Gates never received any other communication from Defendant Talari regarding the operations of Defendant Apotheca's business, including its subsidiary ProMED. The only updates that Harbor Gates received from Defendants was in connection with Defendant Apotheca's response to the Commission's Trading Suspension Order and its attempt to restore trading of Defendant Apotheca's securities.

24. On or about July 18, 2019, Harbor Gates sent Defendant Apotheca a default notice (attached hereto as "**Exhibit C**") advising it of Defendant Apotheca's defaults under the Notes. An Event of Default under the Notes caused any outstanding principal due under the Notes to become immediately due and payable in cash at the Mandatory Default Amount (as defined in the Notes). *See* Notes at § 2.00.

25. In addition, Defendant Apotheca failed to repay the Notes by the March Maturity Date and April Maturity Date.

26. Harbor Gates has provided all notices required under the Notes. However, Defendant Apotheca remains in breach of the terms of the Notes.

27. As a result of Defendant Apotheca's conduct, Defendant Apotheca has breached the terms of the Notes and the Notes are immediately due and payable. However, in spite of receiving a default notice from Harbor Gates on or about July 18, 2019, Defendant Apotheca has

failed to pay the required principal and interest, including any default interest, due under the Notes.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

28. Harbor Gates repeats and re-alleges the allegations contained in paragraphs 1-27 as if fully set forth in this Count.

29. Defendant Apotheca entered into a valid contract with Harbor Gates upon the execution of the Notes.

30. Harbor Gates performed all of the requisite obligations and duties required by the Notes.  However, by engaging in the conduct described herein, Defendant Apotheca breached several terms of the Notes, including, but not limited to, failing "to satisfy its 'filing' obligations under the [Exchange Act], as amended and the rules and guidelines issued by the OTC Markets News Service, OTC Marktes.com and their affiliates."  Notes at § 2.00(xvi).

31. As a result of the breaches, the Notes have become immediately due and payable. However, Defendant Apotheca has failed to pay the principal, interest and any penalties due on the Notes.

32. As a direct and proximate result of Defendant Apotheca's breaches, Defendant Apotheca has caused Harbor Gates to suffer damages in an amount to be determined at trial.

### COUNT II
### Unjust Enrichment

33. Harbor Gates repeats and re-alleges the allegations contained in paragraphs 1-32 as if fully set forth in this Count.

34. Defendant Apotheca and Harbor Gates entered into a binding agreement upon the execution of the Notes.

35. Harbor Gates performed all its duties under the Notes.

36. Defendant Apotheca benefitted from the funding provided by Harbor Gates pursuant to the Notes. However, Defendant Apotheca failed to perform certain obligations under the terms of the Notes. As a result, Defendant Apotheca was unjustly enriched to Harbor Gates' detriment.

## COUNT III
### Fraudulent Inducement
(Against Defendants)

37. Harbor Gates repeats and re-alleges the allegations contained in paragraphs 1-36 as if fully set forth in this Count.

38. Defendants, through Defendant Talari, knowingly misrepresented to Harbor Gates that Defendant Apotheca had not entered into significant debt and that ProMED had already received approximately $500,000.00 in preorders and had a full sales infrastructure in place. Defendant Apotheca, through Defendant Talari, informed potential investors, including Harbor Gates, that Defendant Apotheca expected approximately $1.2 million in total projected revenues for Project I.

39. Defendant Talari knowingly misrepresented these facts during a conference call on or about February 25, 2019. Defendants, through Defendant Talari, made the misrepresentations described herein to Harbor Gates in an effort to induce Harbor Gates to enter into the Notes and fund the loans. *See* ¶¶ 9, 10 and 18.

40. Whether Defendant Apotheca had not entered into significant debt transactions and whether ProMED already received approximately $500,000.00 in preorders and had a full sales infrastructure in place was material to Harbor Gates in connection with its decision to invest.

41. Defendants knew that these material misrepresentations were false at the time he communicated this information to Harbor Gates.

42. Harbor Gates would not have invested if it had known of these material misstatements.

43. Harbor Gates reasonably relied on Defendants' material misstatements when it invested in Defendant Apotheca through the Notes.

44. Harbor Gates could not have discovered the truth of Defendants' misstatements and omissions through the exercise of ordinary diligence because the information was either kept confidential or known only by Defendants.

45. Defendant Apotheca has failed to repay the Notes. Harbor Gates has been damaged as a proximate result of Defendants' fraudulent inducement.

46. Because Defendants, through Defendant Talari's conduct, engaged in fraudulent conduct willfully and maliciously, and with the intent to damage Harbor Gates, Harbor Gates is entitled to an award of damages, including punitive damages.

## **DEMAND FOR TRIAL BY JURY**

Harbor Gates respectfully requests that this matter be heard before a jury.

**DEMAND FOR RELIEF**

WHEREFORE, Harbor Gates Capital LLC respectfully requests that this Court enter a judgment in favor of Harbor Gates Capital LLC and against Defendants:

a. For actual damages in an amount to be proven at trial;

b. For interest and costs;

c. Reasonable attorney's fees pursuant to § 5.00(a) of the Notes; and

d. For such other legal or equitable relief as the Court deems just and proper.

**DATED:** April 17, 2020
Coral Gables, Florida

Respectfully Submitted,

**HUNTER TAUBMAN FISCHER & LI LLC**

*/s/ Mark David Hunter*
Mark David Hunter, Esquire
Florida Bar No. 12995
Jenny Johnson-Sardella, Esquire
Florida Bar No. 67372
2 Alhambra Plaza, Suite 650
Coral Gables, Florida 33134
Telephone: (305) 629-1180
Facsimile: (305) 629-8099
E-Mail: mhunter@htflawyers.com
jsardella@htflawyers.com