UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HARBOR GATES CAPITAL, LLC

    Plaintiff,
v.                              Case No. 8:20-cv-887-VMC-JSS

APOTHECA BIOSCIENCES, INC.,
and SAEED TALARI,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Saeed Talari's Motion to Dismiss Third Amended Complaint (Doc. # 66), filed on March 18, 2021. Plaintiff Harbor Gates Capital, LLC responded in opposition on April 1, 2021. (Doc. # 67). For the reasons that follow, the Motion is denied.

**I.    Background**

According to the third amended complaint, Defendant Apotheca Biosciences, Inc. is a Nevada corporation that has branded itself as "a global leader in discovering new cannabinoid medical technologies." (Doc. # 63 at ¶¶ 6, 11). "In an effort to launch a new pharmaceutical grade CBD product line, Defendant Apotheca incorporated a new subsidiary, ProMED Biosciences, Inc." (Id. at ¶ 12).

Around February 2019, "an agent of Defendant Apotheca contacted [Plaintiff Harbor Gates Capital, LLC] regarding an opportunity to provide Defendant Apotheca with necessary investment capital to fund ProMED's initial pharmaceutical grade CBD product line." (Id. at ¶ 13).

Before Harbor Gates invested in Apotheca, Apotheca's Chief Financial Officer, Defendant Saeed Talari, disclosed to Harbor Gates "that Defendant Apotheca had only issued two (2) other notes, and therefore, had not entered into significant debt transactions." (Id. at ¶ 14). "On or about February 25, 2019, Defendant Talari also advised Harbor Gates during a phone call that "ProMED had already received approximately $500,000.00 in preorders and had a full sales infrastructure in place." (Id.).

"Based on this information, Harbor Gates agreed to invest in Defendant Apotheca's ProMED investment opportunity and made two (2) loans to Defendant Apotheca totaling $280,500.00." (Id. at ¶ 15). "Apotheca issued a six (6) month, 5% fixed convertible promissory note to Harbor Gates in the principal amount of $165,000.00," and "Harbor Gates funded the March Note on March 19, 2019." (Id. at ¶ 16). This March Note was "due and payable on or about September 19, 2019." (Id.).

"[O]n or about April 22, 2019" — after Harbor Gates made the first investment, but before it made the second investment — Talari advised Harbor Gates via phone call that the "investment funds had been used as set forth in the March Note and that Defendant Apotheca had received a large amount of ProMED products and put them into the market for sale." (Id. at ¶ 18).

Subsequently, "Apotheca issued a six (6) month, 5% fixed convertible promissory note to Harbor Gates in the principal amount of $115,500.00, and "Harbor Gates funded the April Note on April 29, 2019." (Id. at ¶ 19). This April Note was "due and payable on or before October 26, 2019." (Id.).

However, according to the third amended complaint, Talari's statements were false and "merely a month later on May 16, 2019, Defendant Apotheca reported cash of only $168,462.00, assets of $108,884.00, liabilities of $931,877.00, no revenue since inception, and a net loss of $2,512,440.00." (Id. at ¶ 21).

Apotheca proceeded to default on both notes, leading Harbor Gates to send Apotheca a default notice "[o]n or about July 18, 2019." (Id. at ¶ 27). "[I]n spite of receiving a default notice from Harbor Gates on or about July 18, 2019, Defendant Apotheca [] failed to pay the required principal

3

and interest, including any default interest, due under the Notes." (Doc. # 63 at ¶ 30).

In response to Apotheca's failure to pay, Harbor Gates initiated this action against Apotheca and Talari on April 17, 2020. (Doc. # 1). The initial complaint alleged three counts: (1) breach of contract, (2) unjust enrichment, and (3) fraudulent inducement. (Doc. # 1). On August 19, 2020, Harbor Gates filed a second amended complaint containing the same three counts, but adding the allegation that Talari was intentionally concealing his whereabouts and evading service. (Doc. # 28 at 2-3).

When neither defendant made an appearance in the case, Harbor Gates applied for entry of Clerk's default. (Doc. ## 38, 40). The Clerk entered default against Apotheca on October 1, 2020 (Doc. # 39) and against Talari on October 8, 2020. (Doc. # 42). Harbor Gates subsequently moved for default judgement against both Defendants. (Doc. # 44). Prior to the Court ruling on the matter, Harbor Gates and Talari filed a joint motion to set aside the Clerk's default as to Talari. (Doc. # 47). The Court granted the motion and set aside the Clerk's default as to Talari. (Doc. # 48). The Clerk's entry of default remains in place against Apotheca. (Doc. # 39).

On January 12, 2021, Talari moved to dismiss the second

4

amended complaint. (Doc. # 56). The Court dismissed the second amended complaint as a shotgun pleading on February 18, 2021, denied Talari's motion to dismiss as moot, and granted Harbor Gates leave to amend. (Doc. # 62).

Harbor Gates then filed a third amended complaint on February 24, 2021, alleging three counts: (1) breach of contract against Apotheca, (2) unjust enrichment against Apotheca, and (3) fraudulent inducement against both Apotheca and Talari. (Doc. # 63). Talari now moves to dismiss the claim against him (Count III). (Doc. # 66). Harbor Gates has responded (Doc. # 67), and the Motion is ripe for review.

II. **Legal Standard**

　　A.　**Rule 12(b)(6)**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

> allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### B. Rule 9(b)

The Federal Rules of Civil Procedure accord a heightened pleading standard to claims for fraud, requiring that they be pled with particularity. Fed. R. Civ. P. 9(b). Under Rule 9(b), the "plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir.

6

2010) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

This "requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." W. Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

### III. Discussion

Talari seeks dismissal of Count III, claiming that Harbor Gates "fails in all respects to state the cause of action for fraud in the inducement." (Doc. # 66 at 13).

To state a claim for fraudulent inducement under Florida law, a plaintiff must allege: (1) a false statement regarding a material fact; (2) the statement maker's knowledge that the representation is false; (3) intent that the representation induces another's reliance; and (4) consequent injury to the party acting in reliance. Thompkins v. Lil' Joe Records, Inc., 476 F.3d 1294, 1315 (11th Cir. 2007) (internal citations omitted). The Court agrees with Harbor Gates that it has satisfied all four elements.

### A. False Statement Regarding a Material Fact

Talari challenges the first element of fraudulent inducement — a false statement regarding a material fact – in two ways. First, Talari contends that Harbor Gates fails to allege fraud with any particularity. (Doc. # 66 at 12-13). Specifically, Talari argues:

> Without any allegations of any particular conduct, or even general conduct which meets the requirements of a fraud pleading, Where is the fraud? in context of any of Talari's alleged statements? . . . There is no particularity given in such pleading that point to any actual facts that the statements relied upon were false. Just mere allegations, conclusory in nature, and without facts to show that the statements were false.

(Id.).

The Court disagrees. The third amended complaint alleges several misrepresentations and omissions with specificity. For example, Harbor Gates alleges that "[p]rior to investing [in Apotheca]," Talari disclosed to Harbor Gates "that Defendant Apotheca had only issued two (2) other notes, and therefore, had not entered into significant debt transactions." (Doc. # 63 at ¶ 14). But according to the third amended complaint, this statement was false and "merely a month later on May 16, 2019, Defendant Apotheca reported cash of only $168,462.00, assets of $108,884.00, liabilities of $931,877.00, no revenue since inception, and a net loss of

$2,512,440.00." (Id. at ¶ 21).

Harbor Gates also claims that around February 25, 2019, Talari falsely advised Harbor Gates, over telephone, that "ProMED had already received approximately $500,000.00 in preorders and had a full sales infrastructure in place." (Id. at ¶ 14). Similarly, Harbor Gates alleges around April 22, 2019, Talari misrepresented over the telephone that Apotheca had "received a large amount of ProMED products and put them into the market for sale." (Id. at ¶ 18). According to the third amended complaint, these statements were false because no such infrastructure was in place and Apotheca lacked any preorders of the ProMED products. (Id. at ¶¶ 14, 22, 24).

These allegations clearly identify the "who, what, when, where, and how" of the alleged fraud, Garfield, 466 F.3d at 1262, and alert Talari of the precise misconduct with which he is charged. Ziemba, 256 F.3d at 1202. The Court therefore agrees with Harbor Gates that it has alleged the first element of fraudulent inducement with the requisite particularity.

Talari's second argument is no more persuasive. In his Motion, Talari contends that Harbor Gates fails to satisfy the first element because at the time the alleged statements were made, they were true. (Doc. # 66 at 5). For support, Talari asks the Court to take judicial notice of a brief

9

Apotheca filed with the Securities and Exchange Commission in August 2019 (the "SEC Brief" or "the brief"). (Id.; Doc. # 56-2). But at this time, the Court's scope of review is "limited to the four corners of the complaint." St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002) (internal citation omitted). A district may only consider an extrinsic document at the motion to dismiss stage if the document is "(1) central to the plaintiff's claim, and (2) its authenticity is not challenged." SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) (internal citation omitted).

The SEC brief does not fall within this exception, as it is neither central to Harbor Gates's claim nor unchallenged. True, the operative complaint mentions the SEC Brief. (Doc. # 63 at ¶ 24). But the brief is not integral to the overall claim of fraudulent inducement, and Harbor Gates would not "unquestionably" need to offer the document to prove its case. Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1285 (11th Cir. 2007). Indeed, Harbor Gates explicitly "disputes the facts advanced in [the SEC Brief]." (Doc. # 67 at 8). Therefore, the Court agrees with Harbor Gates that the brief is not the kind of extrinsic document that may be considered at this stage of the proceedings.

Nor will the Court take judicial notice of the substance of the SEC Brief. As Harbor Gates points out, Federal Rule of Evidence 201 allows a district court to take judicial notice of an "adjudicative fact that is both 'not subject to reasonable dispute' and either (1) 'generally known within the trial court's territorial jurisdiction' or (2) 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" Grayson v. Warden, Comm'r, Alabama Doc, 869 F.3d 1204, 1224-25 (11th Cir. 2017) (quoting Fed. R. Evid. 201(b)). The Eleventh Circuit has provided examples of the kinds of facts that courts may ordinarily judicially notice: "(1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997).

Unlike these examples, the facts set out in the SEC Brief are heavily disputed and have no indicia of accuracy. They are merely Apotheca's arguments in an unrelated regulatory matter. These are not the kind of adjudicative facts that a court may judicially notice. Id. Talari's construed request for judicial notice is therefore denied.

As the SEC Brief is neither judicially noticed nor the

kind of extrinsic document the Court may examine at this time, the Court agrees with Harbor Gates that the scope of review is limited to the four corners of the complaint. And as previously discussed, the third amended complaint alleges several concrete examples of misstatements and omissions. Taking these allegations as true, the Court agrees that Harbor Gates has adequately alleged a false statement regarding a material fact. Jackson, 372 F.3d at 1262. Talari's argument that the contents of the SEC Brief "completely contradict[]" the allegations of the third amended complaint, and therefore Harbor Gates "sets forth no facts that show that [these] statement were false when they were [allegedly] made," (Doc. # 66 at 5), is more appropriate at the summary judgment stage.

### B. Remaining Elements

The third amended complaint likewise satisfies the remaining elements of a fraudulent inducement claim. Regarding the second element of knowledge, the third amended complaint alleges that at the time the misrepresentations were made, Talari was Apotheca's Chief Financial Officer and therefore knew his statements were false. (Doc. # 63 at ¶ 14). The Court agrees that, from Talari's position as CFO, it can be inferred that Talari had knowledge of Apotheca's financial transactions and therefore knew his representations

12

to Harbor Gates were false. See Lopes v. DWB Holding Company, No. 6:09-cv-386-MSS-GJK, 2010 WL 11507329, at *7 (M.D. Fla. Jul. 1, 2010) (denying a motion to dismiss where plaintiffs alleged that the defendant knew insufficient funds were available to pay the amounts due under a contract and knew that no payments would be made).

Harbor Gates satisfies the third element of intent by alleging that Talari misrepresented Apotheca's stability in order to induce Harbor Gates to invest in Apotheca and fund two loans. (Doc. # 63 at ¶¶ 14-15, 18-21). Specifically, Harbor Gates alleges that "[b]ased on [Talari's misrepresentations], Harbor Gates agreed to invest in Defendant Apotheca's ProMED investment opportunity and made two (2) loans to Defendant Apotheca totaling $280,500.00." (Doc. # 63 at ¶¶ 14-16). Accepting these allegations as true, and taking all reasonable inferences in favor of Harbor Gates, "[Harbor Gates] ha[s] pled sufficient facts from which the Court can infer an intent by Defendant [Talari] to induce reliance and that [Harbor Gates's] reliance on Defendant [Talari's] representations was reasonable." See Lopes, 2010 WL 11507329, at *7 (denying motion to dismiss fraudulent inducement claim because the plaintiffs sufficiently alleged a scheme to defraud the plaintiffs).

13

As for the fourth element of damages, the operative complaint claims that "in spite of receiving a default notice from Harbor Gates on or about July 18, 2019, Defendant Apotheca has failed to pay the required principal and interest, including any default interest, due under the Notes." (Doc. # 63 at ¶¶ 28-30). Harbor Gates thus alleges harm flowing directly from the misrepresentations, satisfying the fourth element.

In sum, the third amended complaint adequately pleads each element of a fraudulent inducement claim, making dismissal inappropriate.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Saeed Talari's Motion to Dismiss (Doc. # 66) is **DENIED.**

(2) Defendant Saeed Talari's answer to Count III is due May 20, 2021.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 6th day of May, 2021.

*Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE